[Civ. No. 24898.   First Dist., Div. Three.   Apr. 29, 1968.]

THE STATE OF CALIFORNIA, Plaintiff and Appellant,
v. PACIFIC FAR EAST LINE, INC., Defendant and
Respondent.

610

Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Dorr, Cooper & Hays and Alan B. Aldwell for Defendant and Respondent.

BROWN (H. C.), J.—The State of California by an action in declaratory relief seeks an adjudication that wages of seamen earned on Pacific Far East Line vessels unclaimed for seven years constitute abandoned property and are subject to the provisions of the Uniform Disposition of Unclaimed Property Act (California Act). (Code Civ. Proc., §§ 1500-1527.) The trial court granted defendant Pacific Far East Line's motion for summary judgment and the State of California appeals.

The only question presented is: Did the trial court

err in adjudging Pacific Far East Line, Inc., a California corporation, with its principal office in San Francisco, exempt from reporting unclaimed wages for the reason that the California Act conflicts with federal law which purportedly has pre-empted the subject of seamen's wages.

Section 1508 of the Code of Civil Procedure defines abandoned property as: "All intangible personal property, except property of the classes mentioned in Sections 1502, 1503, 1504, 1505, 1506, and 1507 of this code, including any income or increment thereon and deducting any lawful charges, that is held or owing in this State in the ordinary course of the holder's business and has remained unclaimed by the owner for more than seven years after it became payable or distributable is presumed abandoned."

The California Act also provides that the holder shall report unclaimed wages and pay or deliver them to the State Controller; that the statute of limitations is not a defense to such reporting and payment or delivery; that notice shall be given to the owner by publication and otherwise; that the owner may appear at any time and claim the property from the Controller after it has been delivered to him; and that delivery to the Controller is a defense to any action by the owner against the holder. (See Code Civ. Proc., §§ 1500-1527.)

■ The objectives of the California Act are to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of its retention, since experience shows most abandoned property will never be claimed. (*Douglas Aircraft Co.* v. *Cranston,* 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819, 98 A.L.R.2d 298].)

■ It is recognized that the conditions of employment and payment of seamen's wages are matters which have been treated in detail by federal law. (See 46 U.S.C.A., §§ 578-622.) Provisions concerning (a) time of commencement of wages (46 U.S.C.A., § 591); (b) wages when cargo is lost at sea (§ 592); (c) right to wages in case of improper discharge (§ 594); (d) misconduct as affecting right to wages (§§ 590-596); (e) place of payment (§ 597); (f) advance on wages (§ 599); (g) seaman's lien for wages (§ 600), are all examples of coverage of matters by federal law. There are also statutes protecting seamen's wages from attachment (§ 601) and exempting them from state withholding tax (§ 601). Congress has also regulated the disposition of wages for

deceased seamen and deserting seamen which are paid to the Coast Guard and eventually, if no legal claimant appears, become part of a fund for the support of sick and disabled seamen. (See 46 U.S.C.A., §§ 621, 622, 628.) These provisions and many other statutes relating to rights of seamen indicate that Congress has chosen to regulate the subject of seamen's wages and working conditions. *The federal statutes, however, are silent regarding unclaimed seamen's wages* (except wages of deceased or deserting seamen).

█ It is well settled that a state statute will not apply where such application would create a conflict with federal regulation in the same area. (See *San Diego Bldg. Trades Council* v. *Garmon,* 353 U.S. 26 [1 L.Ed.2d 618, 77 S.Ct. 607, 609]; *Guss* v. *Utah Labor Relations Board,* 353 U.S. 1 [1 L.Ed.2d 601, 77 S.Ct. 598, 609]; *Southern Ry. Co.* v. *Reid,* 222 U.S. 424 [56 L.Ed. 257, 32 S.Ct. 140]; *Hill* v. *State of Florida,* 325 U.S. 538 [89 L.Ed. 1782, 65 S.Ct. 1373].)

█ However, Congress has not totally precluded the states from passing non-conflicting legislation affecting seamen's wages. For example, wage claims of seamen are subject to the appropriate state statute of limitations. (*Buckley* v. *Oceanic S.S. Co.,* 5 F.2d 545; *McConville* v. *Florida Towing Co.,* 321 F.2d 162; *Gonzales* v. *The Archangelos,* 135 F.Supp. 663.) If the seaman seeks relief by means of a proceeding in admiralty, the courts will look to the local statute of limitations in applying laches. Although the federal courts are loathe to apply laches to seamen's claims (*Molnar* v. *Gulfcoast Transit Co.,* 371 F.2d 639; *Gayner* v. *The New Orleans,* 54 F.Supp. 25, 29), it is a defense to the claim if there is prejudice and no reasonable excuse for the delay is offered. (*McMahon* v. *Pan American World Airways, Inc.,* 297 F.2d 268; *Gonzales* v. *The Archangelos, supra.*) The imposition of taxes on the earnings of seamen within the waters of the State of Alaska has been held not to be violative of that general body of rules which have as their purpose to establish uniformity and harmony in the field of maritime law. (See *State of Alaska* v. *Petronia,* 69 Wn.2d 460 [418 P.2d 755, 760, 761].) A state may also apply its unemployment insurance statute provisions to seamen. (See *Standard Dredging Corporation* v. *Murphy,* 319 U.S. 306 [87 L.Ed. 1416, 63 S.Ct. 1067].)

█ Respondent contends that application of the California Act is precluded by pre-emptive conflict with express provisions covering the right of a seaman to a lien on the ship

for unpaid wages (46 U.S.C.A., § 600) and with the general federal policy requiring prompt payment of wages without charge of a collection fee. (46 U.S.C.A., § 596.)

Respondent claims that under the California Act the seaman would lose his right to a lien on the vessel because the California Act compels payment of the unclaimed wages to the state and provides that such payment is a complete defense to a claimant, but this argument is without merit as the California Act does not apply to any legally enforceable claim by a seaman against his employer. On such a claim the right to a lien on the ship is retained by the seaman. The California Act applies only to seamen's wages which have been unclaimed for seven years so that the statute of limitations or laches (Code Civ. Proc., § 1508) would be defenses available to the employer in the event of a claim by a seaman. As there is no time limit prescribed in the California Act in which seamen must make their claims (Code Civ. Proc., §§ 1517-1520), the act restores rather than defeats the right of a seaman to his wages.

Respondent's counsel has introduced into the record a purported waiver by the company of the statute of limitations, and it is contended that it is a company policy to permit the seaman to obtain his wages by simply applying to the company regardless of lapse of time. The waiver by respondent shipping company of its defense of the statute of limitations is meaningless as the company's board of directors is subject to change or the company could merge or dissolve, and with the occurrence of such event the present commitment could be eliminated. The act does not prevent the company from continuing its payment policy. If it has paid the wages to the state, it can also pay the seaman and then recover the payment without paying a service charge. (Code Civ. Proc., § 1513.)

Respondent's argument that the California Act would require the seaman to encounter great delay in obtaining the wages that have been delivered to the State Controller (Code Civ. Proc., § 1512), because the State is known for its "methodical deliberateness" and that the procedure would be costly to the seaman is not persuasive. *It is apparent that certainty of payment is highly preferable (even with the speculative delay referred to by respondent) to a possibility of no payment* since in the absence of the California Act a wage claim might be subject to the defense of the statute of limitations or laches. Under the provisions of the California

Act even the possibility of a defense is removed as there is no time limit on presenting the claim. The imposition of a small charge by the state (1 percent of gross or $10, whichever is greater, Code Civ. Proc., § 1519, subd. (b)) for collecting the wages, advertising the holding of the funds, and for holding it in trust awaiting the seaman's claim is not so oppressive or arbitrary as to violate any paternal federal policy toward seamen.

Respondent further argues that the general policy of the federal government relative to unclaimed wages is established by the provisions for unclaimed wages of deceased or deserting seamen. (See 46 U.S.C.A., §§ 621-622.) In those cases the wages are delivered to the Coast Guard and, if not claimed, eventually are paid into a federal fund for sick and destitute seamen. Respondent's argument ignores the fact that until Congress enacts legislation affecting these unclaimed wages, all such wages would remain the property of the company employer since respondent does not pretend to offer to pay the wages into a seamen's fund. It is clear that Congress by its legislation intends to benefit the seaman and not the employer. The court in *Gayner* v. *The New Orleans, supra,* 54 F.Supp., 25, 27, said: "It is too well established to require substantiation by citation, that the fullest protection to seaman for *all maritime services* has always been the policy of the Admiralty." Such congressional intent would tend to favor the California Act which offers additional protection for seamen.

It is concluded that the California Act is aimed at resident corporations and applies to funds which by lapse of time and protection of the statute of limitations have become a part of the general assets of the company and are subject to state regulation. The act does not interfere with any essential feature of federal jurisdiction or with the development of harmonious and uniform maritime rules. If anything, it furthers the paternal policy of federal law in protecting seamen.

The judgment is reversed.

Draper, P. J., and Salsman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 26, 1968. Sullivan, J., did not participate therein.