OPINION OF THE COURT
Vincent E. Doyle, J.
Defendant Buffalo Bills, Inc. (hereinafter Bills) moves for an order dismissing the amended complaint for failure to state a cause of action (CPLR 3211, subd [a], par 7) and based upon documentary evidence (CPLR 3211, subd [a], par 1), or in the alternative, striking the class action allegations (CPLR art 9). Plaintiff opposes this, motion.
By May 12,1982, the plaintiff paid the Bills $130.50, the amount due for season tickets for each of 10 scheduled home games of the Buffalo Bills football team. The Bills thereafter played both of the scheduled home preseason games and the first two regular season home games. Prior to the third scheduled regular season game at home, the National Football League Players Association called a strike by its members against all the teams in the National Football League including the Bills, and as a consequence, the Bills canceled the game. The football players remained on strike, and the Bills canceled the next two scheduled *881 home games. The strike then ended, and the Buffalo Bills football team played the three final scheduled home games. During the strike, the Bills notified ticket holders, including the plaintiff, that it would issue to them refunds for each of the three canceled home games. Following the resumption of play of the football games, it issued the plaintiff and all the other season ticket holders, the sum of $39 for the three games not played during the strike.
It appears from the amended complaint, the affidavit of Mr. Cipriano and of the plaintiff, and other papers submitted by the parties, that the plaintiff paid a total of $130.50 for 10 football tickets, or $13 per ticket.
The Bills contend that the plaintiff has failed to state any cause of action in his amended complaint. They argue that: (1) they never made any express or implied warranty to the plaintiff or other season ticket holders in connection with the sale of the tickets; (2) although payment was accepted by the Bills from the plaintiff and other season ticket holders for the purchase of a series of tickets, they never promised that each game in the series would be played, but rather reserved the right to revoke each ticket; (3) the reason for the diminished number of games played was the strike by the National Football League Players Association over which the Bills had no control, and that the purchasers assumed the risk of such a strike; (4) in any event, a cash refund was made to all purchasers for the canceled home games; and (5) the Bills were not unjustly enriched nor did they engage in false advertising or deceptive acts or practices.
The plaintiff insists that his amended complaint states causes of action for breach of contract and warranty, fraudulent misrepresentation, unjust enrichment, and deceptive practices. He asserts the Bills contracted and warranted with him and other ticket holders that the Buffalo Bills football team would play 10 home games in 1982, instead of the 7 home games actually played (2 preseason and 5 regular season). He argues that the first game was canceled by the Bills, thus, they breached the contract and warranty and he became entitled to a full refund of the season ticket package he had purchased. (No claim was made by plaintiff for this relief until now. On the contrary, *882 plaintiff attended the home games played after termination of the strike.) He contends he received a refund for only those games canceled.
Before interposing an answer, the Bills challenge the legal sufficiency of the complaint on its face, thus for purposes of this motion, the allegations are deemed to be true, and all favorable inferences which may be drawn or reasonably implied from the complaint enure to the benefit of the plaintiff (Underpinning & Foundation Constructors v Chase Manhattan Bank, 46 NY2d 459; Foley v D’Agostino, 21 AD2d 60).
Even assuming the plaintiff had made all the proper and necessary allegations in his amended complaint, the Bills were not contractually obligated to plaintiff to play 10 football games in Buffalo, New York.
Generally, a ticket for admission to a place of public amusement entitles one to enter the premises. This right, however, is not without limitation. A ticket is but a license, and is revocable so long as the revocation is not based upon a discriminatory reason infringing upon a person’s civil rights (see Aaron v Ward, 203 NY 351). Moreover, a ticket to an entertainment performance or activity does not create a right in rem (Collister v Hayman, 183 NY 250; People ex rel. Burnham v Flynn, 189 NY 180). A theatre ticket, for example, is simply a license to the party presenting the same to witness a performance to be given at a certain time, and being a license personal in its character, may be revoked (Mendenhall v Klinck, 51 NY 246).
In the present case, each ticket sold by the Bills bears the following legend on the reverse side: “This ticket is a revocable license; admission may be refunded or terminated at any time * * * date subject to change.”
It is clear the Bills reserved the right to refuse to honor the football tickets in question. Thus, when the Bills issued tickets to the plaintiff and other ticket holders, they issued licenses which could be revoked at any time (Levine v Brooklyn Nat. League Baseball Club, 179 Misc 22). The plaintiff has not alleged any discriminatory intent on behalf of the Bills in their decision to cancel the games. Thus, this court holds the Bills have not breached any contractual duty owed to the plaintiff.
*883 Moreover, the Bills are entitled to be excused for any alleged nonperformance. When both parties to a contract assume that the performance of the contract will involve the continued existence of a certain state of affairs, and the condition nevertheless changes due to the fault of neither party, then nonperformance of the contractual obligation will be excused (Spalding v Rosa, 71 NY 40). In the instant case, both parties anticipated that the Bills and their opponents would have players ready to play at scheduled home games. However, the players were unavailable. The National Football League Players Association called a strike by its members against the National Football League. Clearly, neither plaintiff nor defendant had control over that decision. The National Football League is not a party to this action. The Bills, thus, have a lawful excuse for any failure to perform (see 18 Williston, Contracts [3d ed], §§ 1951 A, 1952, 1953).
The plaintiff also claims he has stated a cause of action for breach of express or implied warranty by the Bills. New York courts have recognized a cause of action based upon a breach of warranty arising out of the sale of goods, but have refused to recognize one arising out of the performance of a service (Sala v Tomlinson, 73 AD2d 724), reasoning that a warranty gives rise to a cause of action without fault (Aegis Prods, v Arriflex Corp., 25 AD2d 639). A sporting event constitutes a service (University of So. Cal. v Cost of Living Council, 472 F2d 1065, cert den 410 US 928). Thus, the alleged contract was for services, and, accordingly,, no warranties could be made or implied as a matter of law.
At oral argument plaintiff urged this court to consider a possible cause of action and recovery based upon the poor performance of the Bills football team after the strike had ended, i.e., “diminished quality” of play. Buffalo News sports editor, Larry Felser, in his column of May 30, 1983, warned of the dire consequences of permitting such a theory of recovery to exist. “If the fan (plaintiff) wins against the Bills, every lawyer in Western New York could use the precedent to finance a vacation on the Riveria”. In Felser’s opinion “compared to some of the Bills atrocities of the past, those last seven games (of the 1982 season) were *884 Mona Lisas.” Obviously, “diminished quality” lies in the eye of the beholder. In any event, plaintiff has not sued for any such cause of action, nor is any such a theory set forth in the pleadings and therefore is not before the court.
Plaintiff further argues in his brief that the Bills engaged in deceptive acts or practices, or fraudulent advertising, in violation of sections 349 and 350 of the General Business Law. However, no such allegations are stated in the complaint. Furthermore, this court holds the plaintiff has failed to plead the requisite elements for a cause of action based upon actual or constructive fraud (see Brown v Lockwood, 76 AD2d 721). Similarly, the plaintiff has failed to allege any factual allegations supporting the claim that the Bills were unjustly enriched at his expense, and hence, he has not set forth the necessary components comprising a cause of action for unjust enrichment.
Because the amended complaint is insufficient to state any cause of action, the class action allegations are also dismissed (see CPLR 901, subd 3; Kindel v Kaufman & Broad Homes of Long Is., 67 AD2d 938; Rapp v Dime Sav. Bank, 64 AD2d 964, affd 48 NY2d 658). This decision is based only on the pleadings before the court and is without prejudice to either side.