Docket No. 96755–Agenda 13–May 2004.

JAMES H. CANEL, Appellee, v. JUDY BAAR TOPINKA 
et al.
, Appellants.

Opinion filed October 7, 2004.

JUSTICE FREEMAN delivered the opinion of the court:

In this appeal, defendants argue that, pursuant to section 15 of the Uniform Disposition of Unclaimed Property Act (765 ILCS 1025/15 (West 1998)), the state is entitled to retain dividends issued on shares of stock which were presumed abandoned and delivered to the state. Plaintiff argues the dividends are private property which must be returned to the property owner along with the shares of stock. The appellate court determined that the dividends were the private property of plaintiff, and remanded to the circuit court of Cook County for a determination of just compensation. 342 Ill. App. 3d 65. This appeal followed. 134 Ill. 2d R. 317.

BACKGROUND

Plaintiff, James H. Canel, was the owner of 288 shares of stock of Patrick Industries, Inc. Harris Bank was the holder of the stock, as defined in the Uniform Disposition of Unclaimed Property Act (Act) (765 ILCS 1025/1 
et seq
. (West 1998), now 765 ILCS 1025/0.05 
et seq
. (West 2002)). In December 1998, Harris Bank delivered the stock to defendant Mitchell Murdock, the Director of Financial Institutions, as property presumed abandoned under the Act. See 765 ILCS 1025/11 (West 1998).
(footnote: 1) Defendant Murdock is presently the director of the Unclaimed Property Division of the office of the Treasurer of the State of Illinois.

Plaintiff learned of the remittance of the stock to the Department of Financial Institutions in January 1999. Thereafter, on April 9, 1999, plaintiff submitted a claim to defendant Murdock for the return of the stock along with any dividends or other accruals that had been issued during the time the Department of Financial Institutions held the stock. On August 31, 1999, plaintiff completed a form prescribed by the State Treasurer, defendant Judy Baar Topinka, for the return of his property. The Treasurer returned the stock, but refused to return the dividends issued on the stock.
(footnote: 2)
 On September 11, 2000, plaintiff filed a class action on behalf of himself and others similarly situated. In the complaint, plaintiff described defendant Topinka as being charged with supervising and administering the Unclaimed Property Division of the office of the Illinois Treasurer. Plaintiff alleged that defendant Murdock is charged with administering the Unclaimed Property Division, including disposition of all property that is remitted to the Division and payment of all approved claims for return of such property. All counts of the complaint pertained to both defendants.

Plaintiff alleged that numerous persons and entities own private property deemed abandoned and held by the Treasurer as custodian. Plaintiff further alleged that it is defendants’ policy and practice not to return dividends, interest and accruals earned on the property to the property owners upon application. Instead, defendants retain the dividends, interest and accruals earned on the property for use by the state. In count I of the complaint, plaintiff maintained that by retaining the dividends, interest and other accruals earned on the property and using them for state purposes, defendants violate article I, section 15, of the Constitution of 1970 (Ill. Const. 1970, art. I, §15), which prohibits the taking of private property without payment of just compensation. In count II of the complaint, plaintiff maintained that defendants’ policy and practice of retaining the accruals earned on the property violate the prohibition of the fifth amendment to the United States Constitution, made applicable to the states by the fourteenth amendment, that private property may not be taken for public use without just compensation. U.S. Const. amends. V, XIV. Plaintiff also claimed a violation of 42 U.S.C. §1983.

On November 20, 2000, defendants filed a motion to dismiss the complaint pursuant to section 2–619.1 of the Code of Civil Procedure (735 ILCS 5/2–619.1 (West 2000)). In this combined motion to dismiss, defendants stated grounds for dismissal under both section 2–615 (735 ILCS 5/2–615 (West 2000)) and section 2–619 of the Code of Civil Procedure (735 ILCS 5/2–619 (West 2000)). As grounds for dismissal pursuant to section 2–615, defendants maintained that plaintiff failed to meet the necessary prerequisites for a class action; that plaintiff failed to state a claim for violation of his constitutional rights; and that plaintiff, having failed to exhaust the state administrative review process, could not show a violation of 42 U.S.C. §1983. In support of the claim that plaintiff failed to show a constitutional violation, defendants argued that, pursuant to section 15 of the Act, a property “owner is not entitled to receive income or other increments accruing” after the property is delivered to the state. 765 ILCS 1025/15 (West 1998). As grounds for dismissal under section 2–619, defendants maintained that plaintiff failed to show the existence of a present case or controversy because the shares of stock had been returned to him; and that plaintiff’s claims were barred pursuant to the doctrine of sovereign immunity. In reply, plaintiff argued, 
inter alia
, that there was a justiciable controversy because defendants refused to return the earnings on the shares of stock. Plaintiff also argued that two exceptions to the exhaustion doctrine applied: first, a party need not exhaust his administrative remedies when he attacks the constitutionality of a statute on its face; and second, a party need not exhaust his administrative remedies where it is patently futile to do so.

The circuit court found the motion to dismiss to be well founded and granted the motion. The court reasoned:

“I think you needed to pursue administrative review, and you didn’t. You weren’t deprived of the remedy. And any residual claims that you address in your complaint appears to be claims that would have to be pursued in a court of claims. You haven’t been deprived of the process in the face of things.”

The appellate court reversed and remanded. 342 Ill. App. 3d 65. The court noted that at oral argument defendants conceded plaintiff was not required to exhaust his administrative remedies or seek relief in the Court of Claims. 342 Ill. App. 3d at 68. The court further noted that plaintiff acknowledged he had not appealed from the dismissal of count III of the complaint. 342 Ill. App. 3d at 68 n.1. The court then determined that section 15 of the Act is not an escheat law. 342 Ill. App. 3d at 72. Consequently, the state could not use its powers of escheat as a basis for retaining the dividends at issue. 342 Ill. App. 3d at 72. The court also found that the shares of stock and the dividends earned on the stock remained the property of plaintiff, not the state. 342 Ill. App. 3d at 74. Lastly, the court determined that a “taking” occurred when the Treasurer decided not to return the dividends to plaintiff. 342 Ill. App. 3d at 75. The court remanded the matter to the circuit court for a determination of the compensation, if any, due plaintiff. 342 Ill. App. 3d at 76.

After defendants’ petition for appeal was allowed, we also took under advisement plaintiff’s motion for judicial notice of a pamphlet published by the Treasurer, interpreting the Act. We deny the motion because the material offered reiterates information already available to the court. We now turn to a discussion of the issues at bar.

ANALYSIS

As noted above, the circuit court granted defendants’ hybrid motion for dismissal on the section 2–615 grounds that plaintiff had failed to exhaust his administrative remedies. A motion under section 2–615 of the Code of Civil Procedure attacks the legal sufficiency of the complaint. 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 484 (1994). Such a motion does not raise affirmative factual defenses, but alleges only defects appearing on the face of the complaint. 
Illinois Graphics
, 159 Ill. 2d at 484; 
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 8 (1992). Thus, the question presented by a section 2–615 motion is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. 
Vernon v. Schuster
, 179 Ill. 2d 338, 344 (1997); 
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86-87 (1996). In ruling on a section 2–615 motion, a trial court is to consider only the allegations of the pleadings. 
Illinois Graphics
, 159 Ill. 2d at 484; 
Urbaitis v. Commonwealth Edison
, 143 Ill. 2d 458, 475 (1991). Further, the trial court should dismiss the cause of action only if it is clearly apparent that no set of facts can be proven which will entitle the plaintiff to recovery. 
Bryson
, 174 Ill. 2d at 86-87; 
Illinois Graphics
, 159 Ill. 2d at 488. A court of review determines 
de novo
 whether the trial court should have granted dismissal. 
Beahringer v. Page
, 204 Ill. 2d 363, 369 (2003).

The appellate court believed that plaintiff’s failure to exhaust his administrative remedies limited the court to confine its analysis solely to the question of whether section 15 was facially unconstitutional in its entirety. We do not agree that the analysis must be limited in this fashion because, as we will explain, two other exceptions to the exhaustion doctrine are also present in this case. In order to facilitate an understanding of our holding with respect to the exhaustion issue, we believe it helpful to set out a brief overview of the procedures involved in both the reporting and the claiming of abandoned property under the Act.

Persons in possession of property belonging to another are required, pursuant to the Act, to timely report and to remit to the Director of Financial Institutions (now to the Treasurer) property presumed abandoned. 765 ILCS 1025/1 
et seq
. (West 1998). Generally, property is presumed abandoned if it is unclaimed by the owner for a period of five years. See 765 ILCS 1025/2 (West 1998). The property holder’s responsibility to the owner for the return of the property terminates once the property is delivered to the state. 765 ILCS 1025/14 (West 1998).

Upon payment or delivery of the property to the Director, the state assumes custody and is responsible for the safekeeping of the property.
(footnote: 3) 765 ILCS 1025/14 (West 1998). Within 120 days of delivery of the property, for property valued at more than $100, the Director is required to cause notice to be published once in a newspaper of general circulation in the county encompassing the last known address of the property owner. 765 ILCS 1025/12 (West 1998). The notice advises the property owner that all claims regarding the property must be directed to the state. After a reasonable lapse of time, the Director may sell the property at public sale to the highest bidder. 765 ILCS 1025/17 (West 1998). If the probable cost of the sale exceeds the value of the property, the Director may destroy or otherwise dispose of the property. 765 ILCS 1025/17 (West 1998). The proceeds of the sale as well as other funds received under the Act are transferred to the Treasurer, who is then required to set aside in a separate trust fund an amount not exceeding $2.5 million for payments of claims allowed by the Director. The balance of the funds is deposited in the State Pensions Fund.

Any person claiming an interest in property delivered to the state may file a claim to the property or to the proceeds from the sale of the property. 765 ILCS 1025/19 (West 1998). The Director shall consider the claim and may, in his discretion, hold a hearing, to be conducted by the Director or a hearing officer, and receive evidence concerning the claim. 74 Ill. Adm. Code §§760.100, 760.110 (2004). The Director issues a final written decision allowing or denying the claim. If the claim is allowed, and after deducting an amount not to exceed $20 to cover the cost of notice publication and related clerical expenses, the Treasurer is required to pay the claim promptly. 765 ILCS 1025/20 (West 2000).

When the claim is allowed, the state returns the property or proceeds from the sale of the property. The state, however, does not return the income earned on the property during the time that the state serves as custodian of the property. Section 15 of the Act provides:

“When property is paid or delivered to the Director under this Act, the owner is not entitled to receive income or other increments accruing thereafter, except that income accruing on unliquidated stock and mutual funds after July 1, 1993, may be paid to the owner.” 765 ILCS 1025/15 (West 1998).

It is by virtue of section 15 that the state in this case insists that plaintiff is not entitled to the dividends at issue. We note that the shares of stock were unliquidated and were returned to plaintiff.

In the case at bar, plaintiff submitted a claim to defendants for the return of the stock and dividends. Plaintiff also completed a form prescribed by defendants for the return of his property. 38 Ill. Adm. Code §180.100 (1992), now recodified at 74 Ill. Adm. Code §760.100 (2004). However, plaintiff did not specifically request a hearing by the Treasurer (see 765 ILCS 1025/20 (West 1998)) or seek judicial review of the final administrative decision of the Treasurer pursuant to the provisions of the Administrative Review Law. See 765 ILCS 1025/21 (West 1998).

The doctrine of exhaustion of administrative remedies holds that a party aggrieved by an administrative decision cannot seek judicial review without first pursuing all available administrative remedies. 
County of Knox ex rel. Masterson v. The Highlands, L.L.C.
, 188 Ill. 2d 546, 551 (1999); 
Castaneda v. Illinois Human Rights Comm’n
, 132 Ill. 2d 304, 308 (1989). The reasons for the exhaustion requirement are to allow the administrative agency to fully develop and consider the facts of the case before it, to allow the agency to utilize its expertise, and to allow the aggrieved party to obtain relief from the agency, thus making judicial review unnecessary. 
Castaneda
, 132 Ill. 2d at 308, citing 
Illinois Bell Telephone Co. v. Allphin
, 60 Ill. 2d 350, 358 (1975).

The exhaustion doctrine includes administrative review in the circuit court. 
Arvia v. Madigan
, 209 Ill. 2d 520, 532 (2004). Where the Administrative Review Law (735 ILCS 5/3–101 
et seq
. (West 2000)) is applicable and provides a remedy, a circuit court may not redress a party’s grievance through any other type of action. 
Dubin v. Personnel Board
, 128 Ill. 2d 490, 498 (1989). The circuit court’s power to resolve factual and legal issues arising from an agency’s decision must be exercised within its review of the agency’s decision and not in a separate proceeding. 
County of Knox
, 188 Ill. 2d at 552; 
Dubin
, 128 Ill. 2d at 499.

This court has, however, recognized several exceptions to the doctrine of exhaustion of administrative remedies. 
Castenada
, 132 Ill. 2d at 308-09. An aggrieved party may seek judicial review of an administrative decision without complying with the exhaustion of remedies doctrine where a statute, ordinance or rule is attacked as unconstitutional on its face. 
Arvia
, 209 Ill. 2d at 532-33. A party may also seek review where issues of fact are not presented and agency expertise is not involved. 
Landfill, Inc. v. Pollution Control Board
, 74 Ill. 2d 541, 550-51 (1978). Moreover, exhaustion is not required if the administrative remedy is inadequate or futile or in instances where the litigant will be subjected to irreparable injury due to lengthy administrative procedures that fail to provide interim relief. 
Castaneda
, 132 Ill. 2d at 308.

 
We note that, in this case, plaintiff specifically alleged that although section 15 of the Act allows the state discretion in returning the dividends of unliquidated stock to owners, “it is the policy and practice of [the Treasurer’s office] not to return to the property owner any income *** on securities held in custody pursuant to the Act.” Plaintiff further alleged that “in no case” has “such income *** ever been returned to the owner.” In their motion to dismiss, defendants did not dispute plaintiff’s allegations on this point. Indeed, one of defendants’ bases for dismissal was that plaintiff was “not entitled” to the dividends under the Act. In light of the parties’ positions, this is not a case where facts need to have been developed before the agency nor does the question presented constitute a matter for agency expertise. Rather, the issue revolves around the construction and meaning of section 15 of the Act. Moreover, the pleadings reveal that it would have been futile for plaintiff, or any other similarly situated claimant for that matter, to exhaust administrative remedies with respect to asserting a claim for dividends on stock held by defendants pursuant to the Act because the defendants’ position in these types of cases is that the Act transforms into state property dividends earned on shares of stock presumed abandoned under the Act. Defendants argue that because of that fact they need not return dividends to the previous owner. Section 15, however, clearly contains an exception that provides that claimants may in fact be entitled to dividends on unliquidated stock. Given that defendants, as alleged by plaintiff, have 
never
 chosen to exercise their discretion in favor of a claimant–despite the permissive language of the statute–we hold that exhaustion, under these circumstances, was unnecessary and that our review of section 15 is not limited solely to its facial validity. With this procedural matter settled, we now turn the merits.

Plaintiff views defendants’ taking of his dividends as a constitutionally improper taking of private property. He notes that the Act at issue gives to the state only custodial rights to the property that is presumed abandoned. Defendants dispute this, maintaining that the Act bestows to the state ownership rights to the future income that accrues on the abandoned property. Accordingly, defendants claim that owners who abandon property no longer retain a property interest in the income accruing on the abandoned property once the property is transferred to the state and that, as a result, no taking occurs. Plaintiff responds that the state does not take title to presumptively abandoned property and any earnings on the property, while in the state’s custody, belong to the owner of the property. Because this case involves dividends accruing on unliquidated stock, we confine our analysis of section 15 to only dividends earned on shares of unliquidated stock held by the state pursuant to the Act..

As noted, the property presumed abandoned in this case consisted of shares of stock in a corporation. The shares of a corporation are the units into which the proprietary interests in a corporation are divided. 805 ILCS 5/1.80 (West 2000). The proprietary interests represented by the shares of stock consist of management or control rights, rights to earnings, and rights to assets. 
Stroh v. Blackhawk Holding Corp.
, 48 Ill. 2d 471, 479 (1971); 11 Fletcher’s Cyclopedia of Private Corporations §5081 (rev. vol. 2003).

Once a dividend is declared, it becomes a corporate debt owed to the shareholders in proportion to their shares in the corporation, and, if the corporation refuses to pay, the shareholders may sue to recover the unpaid dividend. 11 Fletcher’s Cyclopedia of Private Corporations §5322 (rev. vol. 2003). A lawfully declared dividend is the separate property of the shareholders, wholly disconnected from their shares. 
Ford
 
v. Ford Manufacturing Co.
, 222 Ill. App. 76, 83 (1921). Stated simply, a dividend belongs to the owner of the shares. In this case that owner remained, at all times, the plaintiff, James Canel.

Defendants maintain that the state is entitled to retain dividends issued on shares of stock during the time the state holds the stock in its custody. In response, plaintiff argues that defendants’ appropriation of the dividends by the convenience of labeling the property abandoned and the forced turnover of the property from the bank to the state in inconsistent with the custodial nature and purpose of the Act and constitutes an unconstitutional taking of private property.
(footnote: 4)
 In 1961, our General Assembly enacted, with some modifications, the Uniform Disposition of Unclaimed Property Act, which had been promulgated by the National Conference of Commissioners on Uniform State Laws.
(footnote: 5) See 
Country Mutual Insurance Co. v. Knight
, 40 Ill. 2d 423, 424 (1968); M. Bishop, 
The New Illinois Unclaimed Property Act
, 50 Ill. B.J. 914 (1962). The purpose of the Act is to give custody of certain enumerated property to the state when the property’s owner “does not appear to be aware of its existence and cannot be located.” M. Bishop, 
The New Illinois Unclaimed Property Act
, 50 Ill. B.J. 914 (1962). Various courts and commentators have stressed the custodial nature of this type of act. See 
Insurance Co. of North America v. Knight
, 8 Ill. App. 3d 871, 876 (1972) (recognizing “theory” of the legislation is “that it is custodial in character and that the State takes custody for the owner”);
 Commonwealth
 
Edison Co. v. Vega
, 174 F.3d 870, 872 (7th Cir. 1999) (noting that under the Illinois Act’s provisions, “[t]he State does not acquire title to the property. It is merely a custodian”); Prefatory Note to the 1995 Act, 8C U.L.A. 89 (2001) (emphasizing that “the State does not take title to unclaimed property, but takes custody only, and holds the property in perpetuity for the owner”); M. Bishop, 
The New Illinois Unclaimed Property Act
, 50 Ill. B.J. 914 (1962) (noting that “[u]nder the Illinois Act, the State does not gain title to unclaimed property, but merely perpetual custody”). We agree with the Seventh Circuit’s description of the state’s role under the Act:

“[N]ot only does the state have free use of the property unless and until the owner reclaims it; the state is not required to (and Illinois does not) pay any interest to a reclaiming owner. [Citations.] In effect, the property is an interest-free loan to the state–in perpetuity if the owner never shows up to claim it.” 
Vega
, 174 F.3d 870 at 872.

See also Note, 
Virginia’s Acquisition of Unclaimed and Abandoned Personal Property
, 27 Wm. & Mary L. Rev. 409, 419-20 (1986) (noting three dual policies of the uniform law including the protection of owners in order to reunite them with their property while providing adopting states with a method for raising revenue).

In this case, we have already explained why, under corporate law, dividends issued on plaintiff’s shares of corporate stock are the property of plaintiff. Defendants contend that section 15 works to divest plaintiff of his ownership rights to the dividends and transforms those ownership rights to the state. Defendants maintain that, because the shares of stock were presumed abandoned under the Uniform Disposition of Unclaimed Property Act, the state became entitled to the dividends by operation of the Act as interpreted in light of the common law doctrines of escheat and 
bona vacantia
 and that, as a result, no taking occurred. We disagree with the state’s position for several reasons.

Section 15, as originally enacted by our General Assembly, did not include the exception pertaining to unliquidated stock that appears in the current version of the statute. This was consistent with the original uniform act upon which it was based. However, in 1981, the uniform act was amended to allow owners to receive “any dividends, interest, or other increments realized or accruing on the property at or before liquidation or conversion thereof into money.” 8C U.L.A. 239 (2001); see also 8C U.L.A. 239, §21, Comment (2001) (noting that the 1981 model uniform act changed section 15 of the 1966 act, which had provided “that the owner was not entitled to receive any income or other increment accruing after the delivery of unclaimed property to [the state]”). The current version of section 15 of the Act went into effect on August 26, 1992 (see Pub. Act 87–925 §1, eff. August 26, 1992), and now provides that owners “may” receive income accruing on unliquidated stock. Except in very unusual circumstances affecting the public interest, the legislature’s use of the word “may” indicates that the statute is permissive as opposed to mandatory. 
In re Marriage of Freeman
, 106 Ill. 2d 290, 298 (1985). We agree with defendants that the plain language of the statute indicates that the state may return dividends to owners in addition to the actual shares of the stock at issue. However, we do not agree with defendants’ view that the common law principles of escheat and 
bona vacantia
 transform the presumed abandoned property into state property such that a taking does not occur.

As we have endeavored to show, the Act is custodial in nature. This custodial nature is simply incompatible with the doctrines of escheat and 
bona vacantia
. The animating factor behind these doctrines is that the state, as sovereign, is entitled to property abandoned or otherwise ownerless. At common law, property is considered abandoned when the owner, intending to relinquish all rights to the property, leaves it free to be appropriated by any other person. 
Hendle v. Stevens
, 224 Ill. App. 3d 1046, 1056 (1992). Clearly, property that is presumptively abandoned under the Act is not necessarily abandoned at common law. As explained in Corpus Juris Secundum:

“The Uniform Disposition of Unclaimed Property Act and other similar unclaimed property acts are not true escheat statutes. The dual objectives of this type of statute are to reunite owner with unclaimed funds or property and to give the state, rather than the holder, the benefit of the use of the unclaimed funds or property. The custodial nature of the Uniform Disposition of Unclaimed Property Act serves to establish that the rights of the state are merely derivative from the rights of the owners of the abandoned property. 
The presumption of abandonment under the Uniform Disposition of Unclaimed Property Act is statutory and independent from common law principles of abandonment
.” (Emphasis added.) 30A C.J.S. 
Escheat
 §2(b), at 455 (1992).

And, in 
Presley v. Memphis
, 769 S.W.2d 221 (Tenn. App. 1988), the court explained:

“Although [Uniform Disposition of Unclaimed Property Act] cases are often cited under the heading ‘Escheat,’ delivery of [Uniform Disposition of Unclaimed Property Act] property is not escheat. See, e.g., 
Travelers Express Co., Inc. v. State of Minnesota
, , 506 F. Supp. 1379, 1380 (D. Minn. 1981). Even though experience shows that abandoned property is seldom claimed, title to the property remains in the owner and never vests in the state. 
Douglas Aircraft Co. v. Cranston
, 58 Cal. 2d 462, 374 P.2d 819, 24 Cal. Rptr. 851, 98 ALR2d, 300 (1962); T.C.A. §66–29–123. The owner may recover at any time no matter how remote. 
South Carolina Tax Commission v. York Electric Cooperative, Inc.
, 275 S.C. 326, 270 S.E.2d 626, 628 (1980).” 
Presley
, 769 S.W.2d at 223-24.

Based on the record, we conclude the stock at issue in this case was not abandoned at common law.

An examination of the doctrine of escheat supports this conclusion. At common law, escheat applied to the determination of real property to the state as sovereign. See 30A C.J.S. 
Escheat
 §2(a), at 453 (1992) (defining escheat as “a procedure with ancient origins whereby the sovereign may acquire title to abandoned property if after a number of years no rightful owner appears. Escheat signifies a reversion of property to the state in consequence of a want of any individual competent to inherit, with the state being deemed to occupy the place and hold the rights of the feudal lord”). The right of the state to take property by escheat is generally regulated by statute, and modern statutes have made escheat applicable to personalty.

In Illinois, the death of the property owner is the starting point for escheat of personal property. The Escheats Act (755 ILCS 20/0.01 
et seq
. (West 1998)) provides for the devolution of personal estates to the state, as sovereign, in the event the property owner dies without heirs. The Act requires issuance of letters of office and administration of the estate in conformity with the probate laws. 755 ILCS 20/2 (West 1998). After payment of debts and costs of administration, the circuit court enters an order directing the administrator to pay the balance in his possession to the county treasurer. 755 ILCS 20/2 (West 1998). Accordingly, one of the features of escheat as codified here in Illinois is the fact that a judicial finding is necessary before the state, as sovereign, takes over the ownership rights to the property.

This brief explanation makes it clear that the dividends at issue here are not subject to escheat. Plaintiff is alive and desirous of the return of his property. Thus, we are not concerned with the determination of the personal property of a person who died leaving no known heirs or representatives capable of inheriting the estate. We therefore disagree with defendants’ suggestion that state was entitled to the ownership of the dividends by virtue of common law principles of escheat.

We also find wanting the support defendants claim from the doctrine of 
bona vacantia
. “At common law, abandoned personal property was not the subject of escheat, but was subject only to the right of appropriation by the sovereign as 
bona vacantia
.” 
Anderson National Bank v. Luckett
, 321 U.S. 233, 240, 88 L. Ed. 692, 701, 64 S. Ct. 599, 603 (1944). The underlying principle for application of 
bona vacantia
 was that the state, as sovereign and original owner of all property, had the right to reversion of the property.

We note that with certain exceptions, Illinois has adopted “[t]he common law of England *** and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First.” 5 ILCS 50/1 (West 2002). This court, however, has not had the occasion to determine the applicability of the doctrine of 
bona vacantia
 to Illinois jurisprudence. In considering the applicability of the doctrine, we note the well- reasoned opinion of the Seventh Circuit in 
Illinois Bell Telephone Co. v. Slattery
, 102 F.2d 58 (7th Cir. 1939). The court there rejected the state’s claim, predicated upon the doctrine of 
bona vacantia
, to refunds unclaimed by subscribers of the telephone company. Having reviewed the origins of the doctrine at common law, the court declared itself unsatisfied that the doctrine was recognized by the common law of England prior to the year 1606, the fourth year of James the First. 
Slattery
, 102 F.2d at 67-68. The court also noted that the doctrine of 
bona vacantia
 is generally applied to cases involving: “(1) death intestate with no next of kin of person capable of inheriting; (2) non-charitable trust with a failure of beneficiaries; or (3) corporation dissolved leaving property to which neither stockholders nor creditors were entitled under the English corporation law.” 
Slattery
, 102 F.2d at 68. The court concluded:

“If, however, we should be in error in our conclusion that the only property interest which the subscriber had was a claim against plaintiff which was extinguished at the expiration of the limitation period, thereby leaving nothing to which the state could succeed, we would yet be compelled to decide against the state’s contention on the ground that the common law on which it relies is of such an uncertain and indefinite nature in its scope and limitations that this court would not be justified in proclaiming its existence as a rule of law of Illinois applicable to a situation such as is here presented.” 
Slattery
, 102 F.2d at 68.

We agree with the Seventh Circuit that the origins of the doctrine of 
bona vacantia
 are murky. And, although our research is not intended to be exhaustive, we also agree that the doctrine appears limited in its applications. See 
Hindcastle Ltd. v. Babara Attenborough Associates Ltd.
 [1997] A.C. 70 (H.L. 1997) (insolvent’s interest in a lease); 
Re Potters Oils Ltd.
 [1985] BCLC 203 (Ch. 1985) (liquidator of a company sought an order to disclaim chlorinated waste oil); 
Attorney-General of the Duchy of Lancaster v. G.E. Overton (Farms) Ltd.
 [1982] Ch 277 (Eng. C.A. 1981) (coins minted in the Central or Gallic Empire between A.D. 253 and A.D. 281 were not treasure trove and, consequently, not subject to 
bona vacantia)
; 
In re Barnett’s Trusts
 [1902] 1 Ch 847 (funds belonging to an Austrian who died a bastard intestate and without heirs). Lastly, we recognize that the Illinois Escheats Act is, in essence, a form of 
bona vacantia
 since it applies to personalty. However, as to personalty, the Act is applicable only upon the death of the property owner “without any legacy, and leaving no known heirs or representatives capable of inheriting the same, or the legatees thereof are incapable of holding the same.” 755 ILCS 20/1 (West 1998). Thus, we find that the same reasons which render the doctrine of escheat inapplicable to this case also render the doctrine of 
bona vacantia
 inapplicable as well.

Defendants further claim that the state could have acquired the shares of stock and the dividends issued thereon because the shares of stock were abandoned property. We know of no common law rule which supports defendants’ position that, by virtue of plaintiff’s presumed abandonment of his property, the dividends declared as an incident of ownership of the property become the property of the state. We have explained how the common law doctrines that have historically been used to transform private property to state property have no bearing in this case. Defendants propose that the state is “generous” in returning the shares of stock and keeping only the dividends issued on the stock. We reject the notion that the state, as the custodian of stock placed in its hands for safekeeping, may claim that it is entitled to the dividends issued on the stock.
(footnote: 6) See 
Insurance Co. of North America v. Knight
, 8 Ill. App. 3d 871 (1972) (the rights of the state are derivative from the rights of the owner). At all times the shares of stock remained the private property of plaintiff. Under the circumstances, the dividends, as an incident of ownership, were also private property.

The fifth amendment provides that private property shall not be taken for public use, without just compensation. U.S. Const., amend. V. That prohibition is made applicable to the states through the fourteenth amendment. 
Webb’s Fabulous Pharmacies, Inc. v. Beckwith
, 449 U.S. 155, 160, 66 L. Ed. 2d 358, 364, 101 S. Ct. 446, 450 (1980), citing 
Chicago, Burlington & Quincy R.R. Co. v. City of Chicago
, 166 U.S. 226, 239, 41 L. Ed. 979, 985, 17 S. Ct. 581, 585 (1897). The Illinois Constitution likewise prohibits the taking of private property for public use without just compensation. Ill. Const. 1970, art. I, §15. “Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to ‘existing rules or understandings that stem from an independent source such as state law.’” 
Phillips v. Washington Legal Foundation
, 524 U.S. 156, 164, 141 L. Ed. 2d 174, 183, 118 S. Ct. 1925, 1930 (1998), quoting 
Board of Regents of State Colleges v. Roth
, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972).

Although defined by state law, a property interest is not subject to every whim and vagary of government. As the Supreme Court explained in 
Webb’s Fabulous Pharmacies
, 449 U.S. at 164, 66 L. Ed. 2d at 367, 101 S. Ct. at 452, “a State, by 
ipse dixit
, may not transform private property into public property without compensation.” “In other words, at least as to confiscatory regulations (as opposed to those regulating the use of property), a State may not sidestep the Takings Clause by disavowing traditional property interests long recognized under state law.” 
Phillips
, 524 U.S. at 167, 141 L. Ed. 2d at 185, 118 S. Ct. at 1931. The transformation of private property into public property on a bare assertion of authority is “the very kind of thing that the Taking Clause of the Fifth Amendment was meant to prevent. That Clause stands as a shield against the arbitrary use of governmental power.” 
Webb’s Fabulous Pharmacies
, 449 U.S. at 164, 66 L. Ed. 2d at 367, 101 S. Ct. at 452.

Having decided that the dividends were private property, the question remains whether plaintiff and, if a class is certified, other stockholders are entitled to compensation. The takings clause does not prohibit the taking of private property; rather, it prohibits the taking of private property without just compensation. In rejecting a takings clause claim in the context of clients’ funds deposited by their attorneys into lawyers’ trust accounts, the Supreme Court explained:

“To recapitulate: It is neither unethical nor illegal for lawyers to deposit their clients’ funds in a single bank account. A state law that requires client funds that could not otherwise generate net earnings for the client to be deposited in an IOLTA account is not a ‘regulatory taking.’ A law that requires that the interest on those funds be transferred to a different owner for a legitimate public use, however, could be a 
per se
 taking requiring the payment of ‘just compensation’ to the client. Because that compensation is measured by the owner’s pecuniary loss–which is zero whenever the Washington law is obeyed–there has been no violation of the Just Compensation Clause of the Fifth Amendment in this case.” 
Brown v. Legal Foundation
, 538 U.S. 216, 240, 155 L. Ed. 2d 376, 397, 123 S. Ct. 1406, 1421 (2003).

The present case is before us on appeal from the grant of a motion to dismiss. Consequently, the record is incomplete. We agree with the appellate court that a remand is necessary for development of the facts in the circuit court and a determination of just compensation.

CONCLUSION

We stress that our opinion today is limited only to dividends accruing on stock held by the state under the Act. We hold that such dividends may not be taken by the state without just compensation to the owner. For the aforementioned reasons, the judgment of the appellate court is affirmed.

Appellate court judgment affirmed.

FOOTNOTES
1:     
1
The rights, powers, duties and functions vested in the Department of Financial Institutions to administer the Act were transferred to the State Treasurer on July 1, 1999. See 765 ILCS 1025/0.05 (West 2002). The Act now provides for delivery of property presumed abandoned to the State Treasurer. See 765 ILCS 1025/11 (West 2002). 

2:     
2
In count III of the complaint, filed on his own behalf, plaintiff alleged that defendants retained 88 shares of the stock. It appears, however, that defendants never had the shares in question. The circuit court dismissed count III, and plaintiff has not appealed the dismissal.

3:     
3
The Director may decline to receive any property which he deems to have a value less than the cost of giving notice and holding sale, or he may postpone taking possession until a sufficient sum has accumulated. 765 ILCS 1025/22 (West 1998).

4:     
4
We analyze the issues at bar in the context of the dividends defendants failed to return to plaintiff. We note that plaintiff brought this action on behalf of himself and other property owners. Plaintiff claims that defendants have failed to return interest, dividends, and other accruals of earnings on property presumed abandoned. At this time, the class has not been certified and we do not know whether it will include all property owners deprived of income earned on property or whether it will be limited to stockholders deprived of dividends issued on their stock.

5:     
5
The 1954 Uniform Act was subsequently superseded by the 1966 Uniform Unclaimed Property Act, which was again superseded in 1981 by a new act, which was later superseded by Unclaimed Property Act of 1995.  Prefatory Note to 1995 Act, 8C U.L.A. 88 (2001).

6:     
6
In its custodial nature, the Uniform Disposition of Unclaimed Property Act contrasts sharply with the Escheats Act. Under the Escheats Act, with the exception of minors and persons under legal disability, any person claiming an interest in the property must do so within 10 years or be forever barred from filing a claim. See 755 ILCS 20/7 (West 2002).