FOURTH DIVISION

No. 1-09-3563

| | | |
|---|---|---|
| ADVANCED CONCEPTS CHICAGO, INC., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| | ) | No. 09 L 001244 |
| v. | ) ) | Honorable |
| CDW CORPORATION, an Illinois Corporation, | ) ) | Allen Goldberg, Judge Presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff-appellant, Advanced Concepts Chicago, Inc. (Advanced), filed a complaint against defendant-appellee CDW Corporation (CDW) to recover damages as a third-party beneficiary to a contract between McCormick West Constructors, LLC (McCormick), and Berbee Information Networks (Berbee). CDW later acquired Berbee. The contract required Berbee to retain a certified minority business enterprise (MBE) to complete 40% of a computer installation project and Advanced was listed as the MBE in a schedule attached to the contract. The complaint alleged that Berbee submitted affidavits to McCormick as required by the schedule, representing that Advanced had provided materials and/or labor and had received payment according to the schedule. The complaint further alleged that Berbee breached its contract with McCormick because it never entered into a contractual agreement with Advanced and never made any payments to Advanced. CDW filed a motion to dismiss the complaint for

failure to state a cause of action pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2008)). The trial court granted the motion and denied Advanced's motion to reconsider. On appeal, Advanced contends that the trial court erred in finding that the complaint failed to allege facts sufficient to state a cause of action for relief as a third-party beneficiary of the McCormick-Berbee contract because: (1) Advanced was to be the direct recipient of the benefit of the affirmative action requirement provisions of the contract, (2) a third-party subcontractor can enforce the contractual promise to use its services, (3) payment monitoring provisions provide additional evidence of an intent to directly benefit a third party, and (4) the trial court employed an erroneous third-party beneficiary analysis. For the reasons that follow, we reverse and remand.

## BACKGROUND

On February 2, 2009, Advanced filed a complaint against CDW in the circuit court of Cook County, alleging that CDW was the successor to the business, rights and obligations of Berbee. The complaint further alleged that in January 2007, Berbee entered into a contract with McCormick to supply computer equipment for the McCormick Place West expansion project. A copy of the contract was attached to the complaint. The complaint alleged that Berbee breached its acknowledged obligations under the contract when it failed to enter into a contractual agreement with Advanced for the provision of services related to the project and did not pay any of the proceeds to Advanced.

In the contract between Berbee and McCormick, the scope of work is detailed in Exhibit B, and the affirmative action participation requirements are detailed in Exhibit G. Item (2)(f) in

Exhibit B provides: "Supplier to retain a 'certified' Minority Business Enterprise (MBE) for 40% of Cisco Computer Equipment. See Attached Exhibit G." Item (2) in Exhibit G lists 40% as the MBE "trade-by-trade goal" and contains a reference to the "Schedule A Subcontracting Plan MBE/WBE Participation" that was to be returned with the subcontractor's bid form. Schedule A lists Berbee as the subcontractor and contains a table for listing "sub subcontractors" which includes one entry: Advanced Concepts Chicago, Inc. "Computer equipment" is listed in the "scope of services" column. The total contract amount of $2,042,722.66 appears at the top of the table and the targeted amount shown for Advanced is $817,089.06. Schedule A further provides: "The undersigned will enter into a formal agreement with MBE/WBEs for work listed in this Schedule conditioned upon the award of a contract by [McCormick]." Finally, Schedule A provides: "In addition to the monthly report, you must submit a status report of payments to MBE/WBE subcontractors indicating the amount of payments made."

The complaint further alleged that Berbee submitted two affidavits to McCormick in which it represented that it was sharing 40% of the monies paid by McCormick with Advanced. The affidavits were attached to the complaint. The affidavits state: "[T]he following are the names of all parties who have furnished materials or labor, or both for said work and all parties having contracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each." The first affidavit is dated May 4, 2007, and lists two parties, Berbee and Advanced. It states that of the $919,225 payment Berbee received from McCormick, Berbee was paid $577,152 and Advanced was paid $342,073. The second affidavit is dated May 17, 2007, and again lists Berbee and Advanced, stating that of the

1-09-3563

$908,197 payment Berbee received from McCormick, Berbee was paid $570,227.75 and Advanced was paid $337,969.25. The affidavit also shows that Advanced was owed an additional $137,046.80 of the total balance due on the project of $368,274.26 from McCormick.

The complaint alleged that for the duration of the time period covered by the contract, Advanced remained ready, willing and able to enter into an agreement with Berbee to provide configuration and installation services for computer equipment in the McCormick expansion project. The complaint further alleged that in breach of its obligations under the contract, Berbee did not enter into a contractual agreement with Advanced and did not pay any of the proceeds it received under the contract to Advanced. As a named third-party beneficiary, Advanced sought direct recovery of its damages for Berbee's breach.

CDW filed a motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) for failure to state a cause of action. CDW argued that Advanced was not a third-party beneficiary because the contract was not entered into expressly for the benefit of Advanced, nor did the contract contain any language indicating an intent of the parties to make Advanced a third-party beneficiary. CDW further contended that the purpose behind the MBE provision in the contract was to contribute to McCormick's affirmative action plan and not to confer a specific benefit on Advanced; thus, Advanced was, at best, an incidental beneficiary to the contract.

The trial court granted CDW's motion to dismiss with prejudice, holding that: (1) Advanced failed to allege facts showing that the parties entered into the contract for the purpose of directly benefitting Advanced, (2) the unambiguous terms of the contract establish that the

4

parties did not intend to benefit Advanced directly, and (3) the MBE provision was included to contribute to McCormick's affirmative action plans and was thus incidental to the parties' purpose of benefitting each other. The trial court denied Advanced's motion to reconsider. This appeal follows.

ANALYSIS

A motion to dismiss under section 2-615 of the Code attacks the legal sufficiency of the complaint. *Canel v. Topinka*, 212 Ill. 2d 311, 317 (2004). It does not raise affirmative factual defenses but alleges only defects appearing on the face of the complaint. *Canel*, 212 Ill. 2d at 317. Thus, the question that is presented by a section 2-615 motion is whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Canel*, 212 Ill. 2d at 317. The cause of action should be dismissed only if it is clearly apparent that no set of facts can be proven that will entitle the plaintiff to recovery. *Canel*, 212 Ill. 2d at 318. A reviewing court determines *de novo* whether the trial court should have granted a section 2-615 motion to dismiss. *Canel*, 212 Ill. 2d at 318.

Advanced contends that the trial court erred in determining that its complaint failed to allege sufficient facts to establish that it was a third-party beneficiary and entitled to sue on the contract. Advanced argues that under Illinois law, a provision that imposes upon a promisor an explicit obligation to deliver performance to a third party rather than to the promisee establishes an intent to benefit the third party, citing *XL Disposal Corp. v. John Sexton Contractors Co.*, 168 Ill. 2d 355, 361 (1995), and *Village of Fox Lake v. Aetna Casualty & Surety Co.*, 178 Ill. App. 3d

887, 911 (1989). Advanced also relies on *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252 (1931), and *Organization of Minority Vendors, Inc. v. Illinois Central Gulf R.R.*, 579 F. Supp. 574 (N.D. Ill. 1983), for the proposition that a contractual promise to utilize a third-party subcontractor makes the subcontractor a third-party beneficiary of the contract.

It is well settled in Illinois law that if a contract is entered into for the direct benefit of a third party who is not a party to the contract, such third party is entitled to sue for breach of that contract. See *Carson Pirie Scott*, 346 Ill. at 257 (and cases cited therein); *XL Disposal*, 168 Ill. 2d at 361. The test is whether the benefit to the third party is direct or incidental. *Carson Pirie Scott*, 346 Ill. at 257. In order to determine whether the contracting parties intended to benefit a nonparty to the agreement, courts must look at the terms of the contract and the circumstances surrounding the parties at the time of its execution. *Carson Pirie Scott*, 346 Ill. at 258; *XL Disposal*, 168 Ill. 2d at 361.

A nonparty is a third-party beneficiary if the contracting parties, or at least the promisee, intended to confer a benefit on that party. *Bates & Rogers Construction Corp. v. Greeley & Hansen,* 109 Ill. 2d 225, 232 (1985). "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed." *Carson Pirie Scott*, 346 Ill. at 258; see also *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.*, 78 Ill. 2d 381, 385 (1980), quoting *Carson Pirie Scott*, 346 Ill. at 258. The promise does not have to be for the sole benefit of the third party as long as it is for its direct or substantial benefit. *Town & Country Bank of Springfield v. James M. Canfield*

*Contracting Co.*, 55 Ill. App. 3d 91, 98 (1977). Moreover, if the promisee bargains with the promisor to render a performance directly to a third party, in nearly every case the promisee will have intended to benefit that third party. *Fox Lake*, 178 Ill. App. 3d at 911.

Here, Advanced clearly stands to benefit from the contract between McCormick and Berbee. Thus, this court must determine from the language of the contract and the circumstances surrounding the parties whether the benefit to Advanced is direct or incidental. Although the intent of the parties must be determined on a case-by-case basis, the cases cited by the parties to this appeal provide examples on both sides of this issue.

Courts have held that the benefit was direct in the following cases: (1) *Carson Pirie Scott*, 346 Ill. at 261 (holding that an agreement to purchase certain goods from a named vendor and pay for them if the hotel company did not was for the direct benefit of the vendor); (2) *Resnik*, 78 Ill. 2d at 386-87 (determining that an agreement in which the third party was identified as the user of the building being constructed and given the authority to consult with the contractor and revise the drawings and specifications was for the direct benefit of the user); (3) *Bates & Rogers*, 109 Ill. 2d at 233-34 (concluding that one party to the contract intended to extend the benefit of an exculpatory clause to its engineer where the contract described the relationship between the party and the engineer and specified the responsibilities of the engineer in detail); (4) *XL Disposal*, 168 Ill. 2d at 360-61 (holding that an agreement in which one party promised to make monthly payments to the other party's attorney as part of an asset sale contract was for the direct benefit of the attorney); (5) *East Peoria Community High School District No. 309 v. Grand Stage Lighting Co.*, 235 Ill. App. 3d 756, 761-62 (1992) (concluding that an agreement in which one

party was required to promptly pay all subcontractors, develop and implement a procedure for paying the subcontractors, and submit evidence that all indebtedness had been paid before receiving its final payment was for the direct benefit of the subcontractors); (6) *Fox Lake*, 178 Ill. App. 3d at 911-12 (determining that a performance bond agreement in which one party agreed to perform the work for a third party if the contractor was unable to do so was for the direct benefit of the third party); and (7) *Town & Country Bank*, 55 Ill. App. 3d at 97-99 (holding that an agreement which required the submission of an affidavit of payment to subcontractors or lien waivers before payment was made by the general contractor was for the direct benefit of the subcontractors).

Conversely, courts have held that a third-party beneficiary relationship did not exist in the following cases: (1) *Altevogt v. Brinkoetter*, 85 Ill. 2d 44, 56 (1981) (explaining that an agreement between the owner of a vacant lot and the party commissioned to build a house on the lot was not for the direct benefit of the purchaser of the house where the contract was not part of the record and the complaint did not allege that under the contract the parties intended to benefit a third person); (2) *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 647 (1991) (holding that the condominium association was not a third-party beneficiary of contracts between the owner and contractor of the condominium building and between the general contractor and the subcontractors); (3) *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 179 (1989) (determining that a contract between the general contractor and a subcontractor did not directly benefit the owner where the contract expressly stated that it was the parties' intent that no contractual relationship should exist between the owner and the

8

1-09-3563

subcontractor); (4) *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 19-20 (1994) (concluding that a bus passenger was not a third-party beneficiary to a contract between the city and contractors which obligated the contractors to require all subcontractors to have motor vehicle insurance); and (5) *Federal Insurance Co. v. Turner Construction Co.*, 277 Ill. App. 3d 262, 269 (1995) (holding that a subcontracting agreement was not for the direct benefit of the tenant where the tenant was merely listed in titles on construction drawings and the indemnification provisions did not identify any third parties).

While none of these cases is directly on point and we must consider the facts and circumstances of each case individually, these cases provide useful examples of how the intent of the parties can be determined from the language of the contract. We conclude, for the reasons detailed below, that the language of the McCormick-Berbee contract is more similar to the circumstances of those cases in which courts have determined that the benefit was direct rather than incidental.

Advanced also cites *Organization of Minority Vendors*, 579 F. Supp. 574, as persuasive authority, where a federal district court interpreting Illinois law was faced with a similar dispute. In *Organization of Minority Vendors*, the plaintiffs filed a complaint against multiple defendants, including several railroads. One count of the complaint alleged that the railroad defendants breached the provision in certain funding agreements which required the railroads to achieve 15% MBE participation. The plaintiffs sought relief on a third-party beneficiary theory. *Organization of Minority Vendors*, 579 F. Supp. at 585. The railroad defendants filed a motion to dismiss, arguing that the plaintiffs were not intended beneficiaries of the funding contracts.

9

*Organization of Minority Vendors*, 579 F. Supp. at 586. The court determined that Illinois contract law governed its analysis of the breach of contract claim. *Organization of Minority Vendors*, 579 F. Supp. at 597. The court held that the contractual provisions in the funding agreements were fairly construed as intending to bind the railroads to take steps for the benefit of MBEs. The terms of the affirmative action plans were legal obligations and failure to carry out the terms of the plans was to be treated as a violation of the funding agreements themselves. *Organization of Minority Vendors*, 579 F. Supp. at 598-99. The court concluded by noting that "[i]t is difficult to imagine how an intention to have these funding agreements directly benefit MBEs could be more clearly expressed." *Organization of Minority Vendors*, 579 F. Supp. at 599. The court further noted that the failure to specify the particular MBEs to be benefitted was not determinative; it was enough that the plaintiffs belonged to the class that was identified as being entitled to benefit from the funding contracts. *Organization of Minority Vendors*, 579 F. Supp. at 599. Although *Organization of Minority Vendors* is not binding on this court, we agree with the federal district court's analysis.

Here, the promisee, McCormick, clearly intended to benefit the MBE designated in the contract. The contract includes language in several places indicating that one of the terms that was being bargained for was that 40% of the project was to be completed by an MBE. It is irrelevant whether this requirement was mandated by statute or simply the internal requirement of the corporation. It was clearly stated in the contract. Even when the party that is to receive the benefit is not named in the contract, it is sufficient that a class of potential third-party beneficiaries be adequately defined. *Altevogt*, 85 Ill. 2d at 55. In this case, however, the contract

included a schedule on which the MBE was to be listed with specific instructions that it was to be completed by the promisor, Berbee, and submitted with the bid. Berbee submitted the schedule with Advanced as the MBE designated to receive the benefit and the schedule became part of the contract. Moreover, the contract required that Berbee enter into a formal agreement with Advanced and submit affidavits confirming that a portion of the payments made by McCormick were, in fact, paid to Advanced. Berbee was well aware that this was the promise that was bargained for, as evidenced by its alleged submission of two affidavits falsely stating that it had, in fact, paid a portion of the money it received from McCormick to Advanced. The language of the contract shows that McCormick intended to benefit the MBE listed in the schedule. Thus, Advanced alleged facts sufficient to state a cause of action as a third-party beneficiary of the contract between McCormick and Berbee and the trial court erred in granting the section 2-615 motion to dismiss.

Reversed and remanded.

O'BRIEN and LAVIN, JJ., concurring.

1-09-3563

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

_____

ADVANCED CONCEPTS CHICAGO, INC., an Illinois Corporation,

Plaintiff-Appellant,

v.

CDW CORPORATION, an Illiniois Corporation,

Defendant-Appellee.

_____

No. 1-09-3563

Appellate Court of Illinois
First District, Fourth Division

November 4, 2010

_____

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court.

O'BRIEN and LAVIN, JJ., concur.

_____

Appeal from the Circuit Court of Cook County.

Honorable Allen Goldberg, Judge Presiding.

_____

For APPELLANT, Advanced Concepts Chicago, Inc., Chicago, IL (Charles A. Conner, Jr., of counsel)


For APPELLEE, Monico, Pavich & Spevach, Chicago, IL (Michael D. Monico, Barry A. Spevack, Theodore R. Eppel, of counsel)